FLORENCE A. SMALLWOOD, Appellant, *v.* HIGBIE SMITH and Others, Respondents.

First Department, July 1, 1921.

Corporations — suit to enjoin payment of excess salaries and for accounting — effect of agreement entitling preferred stockholders to dividends in proportion to salary paid — right of court to compel repayment — temporary injunction granted restraining payment of salaries — appointment of temporary receiver denied.

In a suit by a preferred stockholder of a corporation to restrain the payment of excess salaries and for an accounting, it appeared that by the articles of incorporation the preferred stock was entitled to ten per cent yearly dividend and to three-eighths of any net profits beyond the sum

of $30,000; that prior to the formation of the corporation an agreement was made for the benefit of preferred stockholders that the manager of the corporation would charge nothing for his services, but if he should receive any compensation therefor the same should be deemed the payment of dividends entitling preferred stockholders to a proportionate dividend; that in 1916 the manager and three others were voted salaries; that in 1917, 1918 and 1919 it was agreed between all parties that the net profits should not be paid in extra dividends, but should be held subject to the rights of all stockholders; that during said years the manager received an increased salary paid upon a resolution of the board of directors, but the increased salaries of the other three defendants were paid by the manager from a bonus voted to him at the end of each year; that the sole charge of mismanagement of the corporation which is entirely solvent is in the payment of the excess salaries.

*Held*, that the effect of the agreement for the benefit of preferred stockholders is not to prohibit the manager from receiving any compensation, but as between the stockholders that such compensation so paid shall be deemed a payment of dividends from net earnings;

That the payment to the other three defendants of excess salaries over and above what would be a fair compensation for their services would be unlawful and in a proper action the court would compel repayment;

That the plaintiff is entitled to a temporary injunction restraining the payment of any salary to the individual defendants in excess of the salaries received by them in 1916, since the net assets of the corporation which might be reserved each year to pay to the plaintiff her proportion of the net profits, upon the assumption that the payment of the excess salaries was the payment of such profits, are insufficient;

That the plaintiff is not entitled to the appointment of a temporary receiver, since the corporation is financially sound and there is no claim that the individual defendants are not able to pay any judgment which may be rendered against them.

APPEAL by the plaintiff, Florence A. Smallwood, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 30th day of March, 1921, denying plaintiff's motion for the appointment of a temporary receiver and to restrain defendants from receiving or paying to the individual defendants, as officers and directors of the corporation, any salary or compensation in excess of the salaries paid prior to August 1, 1916, and from transferring, assigning or otherwise disposing of or interfering with the property and assets of the defendant Smith & Nichols, Inc., except to deliver them to the said receiver, and for such other relief to which the plaintiff may be entitled.

*George E. Blackwell* of counsel [*Blackwell Bros.*, attorneys], for the appellant.

*Clinton J. Ruch* of counsel [*Powell, Wynne & Roberts*, attorneys], for the respondent Elmore.

*Thaddeus G. Cowell* of counsel [*Lord, Day & Lord*, attorneys], for the respondents Stewart P. Drummond and others.

SMITH, J.:

Prior to August, 1913, the defendant Smith, with one Nichols, were copartners doing business in the city of New York. In that year the defendant Smith & Nichols, Inc., was organized with capital stock consisting of $90,000 in preferred stock and $60,000 in common stock. At this time William M. Smallwood had loaned the firm the sum of $30,000. This indebtedness was canceled by Smallwood in consideration of the receipt of $30,000 of the preferred stock. Nichols took $60,000 of the preferred stock and the defendant all of the common stock. The preferred stock had no voting power, but by the articles of incorporation was entitled to ten per cent yearly dividend and to three-eighths of any net profits of the corporation beyond the sum of $30,000. An agreement was entered into between Smith and Nichols prior to the formation of this corporation to the effect that Smith would charge nothing for his services in the management of the corporation, but if he should receive any compensation therefor, that the same should be deemed the payment of dividends as between the parties to said agreement, entitling Nichols to an apportionate dividend upon his preferred stock. While this agreement was in form between Smith and Nichols, it is sworn to by the plaintiff's attorney, who was then acting as the attorney for the copartners, that the agreement was for the benefit of the preferred stockholders and that it was so understood between the said Smallwood and Smith and Nichols. The claim of the attorney that the agreement was for the benefit of all the preferred stockholders seems to be sustained by a resolution passed at a meeting of the common stockholders in November, 1914, wherein it is recited that by

an agreement of said Smith with " the preferred stockholders of said corporation," he has agreed to serve without compensation, and that any sum paid to him nominally as compensation shall not be treated as expenses of the corporation in ascertaining the net profits thereof.

In August, 1916, Smith purchased Nichols' preferred stock. William M. Smallwood had died in 1913, and this plaintiff, his widow, became entitled to the stock under the will of Smallwood, which stock was soon thereafter transferred to her name. The plaintiff has received her dividend of ten per cent at all times since the organization of the corporation. In 1914, 1915 and 1916 she received an extra dividend which presumably amounted to one-eighth of the net profits of the corporation over and above $30,000 as provided in the articles of incorporation. In 1917 it was agreed between all parties that the net profits of the corporation should not be paid in extra dividends at that time, but they should be held in the treasury of the company subject to the rights of all stockholders thereto upon any distribution thereafter to be made. In 1918 and 1919 a similar resolution was passed and agreed to by the attorney, Blackwell, who represented the plaintiff and who was in fact the plaintiff's brother. In November, 1916, the defendant Smith procured a resolution of the board of directors giving to him $2,000 a month as salary to date from the fifteenth of August. In 1916 the defendant Elmore received a salary of $7,880, the defendant Drummond $1,592 and the defendant Bisland $2,080. In 1917, 1918 and 1919 Smith received a salary of $50,000. In 1917 Elmore received a salary of $28,008; in 1918 and 1919 salaries of $29,048. In 1917 Drummond received a salary of $5,750 and in 1918 and 1919 of $17,000 each year. In 1917 Bisland received a salary of $3,770 and in 1918 and 1919 $4,680 each year. The salary of Smith, the president, for the years 1917, 1918 and 1919 was paid upon a resolution of the board of directors, said resolution passed, however, in the latter part of each one of those years. The salaries of the other three defendants were not paid upon a resolution of the board of directors, but were paid by the defendant Smith from a bonus amount of $50,000 voted to him at the end of each year, which he was to distribute as he thought wise. From this $50,000 the

increased salaries were paid to these other defendants and it does not appear what was done with the balance of the $50,000 given to him as a bonus in accordance with these resolutions.

The plaintiff contends that these salaries were unlawfully paid by reason of the agreement between Smith and Nichols made for the benefit of the preferred stockholders, and also as far as the bonus voted to the defendant Smith is concerned, from which the increased salaries of these other three defendants were paid, and that this bonus was voted after the rendition of the services, which action was illegal within *Godley* v. *Crandall & Godley Co.* (212 N. Y. 121), and the sole charge of mismanagement of this corporation made by the plaintiff is in the payment of these excess salaries, which are claimed to be illegal, and the use of the bonus, so far as the same was used otherwise than in the payment of these salaries. The company had at all times been prosperous and is now perfectly sound and without substantial indebtedness and it has liquid assets to the amount of about $200,000. Upon this state of facts the plaintiff in her complaint has asked, *first*, for a receiver of the property of the corporation; *secondly*, that the individual defendants be required to account for and pay to said receiver the moneys unlawfully received by them as salaries for the years 1917, 1918 and 1919, and for the year 1920, as might hereafter be ascertained, and that the individual defendants be enjoined thereafter to pay to the said stockholders a dividend upon the preferred stock of said corporation for each year, which shall be equal to three-eighths of the net earnings of the said corporation as the same may be ascertained over and above the amount of $30,000 in each of said years. *Or in the alternative*, that the payment of all salary to Smith be adjudged to be the payment of dividends, and that the defendants be ordered, as officers of the corporation, to set apart and pay to plaintiff sums equal to one-eighth thereof in each year with interest thereon from the 1st days of January, 1918, 1919 and 1920, respectively; and further that the defendants be enjoined from paying as salaries to the individual defendants any sum in excess of the salaries paid to them in the year 1916, and that during the pendency of this action a temporary injunction be granted to the same effect.

The effect of the agreement made by Smith with Nichols, claimed to be for the benefit of all preferred stockholders, is not to prohibit Smith from receiving any compensation for work done for the corporation, but as between the stockholders, that such compensation so paid shall be deemed a payment of dividends from net earnings. The payment to the other three individual defendants of excess salaries over and above what would be a fair compensation for their services would be unlawful and in a proper action the court would compel their repayment to the corporation by Smith and also by the individual defendants who have received any such unlawful salaries. All of these defendants reside without this State. Service has been made upon all except Smith who is apparently evading service of the summons by remaining away from the jurisdiction of the State. If the payment to Smith be deemed the payment of dividends from net profits, the plaintiff would be entitled to one-eighth of those net profits in excess of $30,000 in each year as her share under the articles of association. The plaintiff would not be entitled to an injunction against the payment to Smith of any salary, provided the plaintiff received her rightful dividend, consisting of one-eighth of the said net profits over and above $30,000, regarding the payment to Smith of salary as payment of dividends from net profits.

If we assume that the capital stock of the company was $150,000, representing $100 for each share of stock, and that the company has $200,000 of liquid assets, there would not be enough net assets in the company in excess of $30,000 which might be reserved each year to pay to her her proportion of the net profits upon the assumption that the payment of salary to Smith was the payment of net profits. Until the trial of the action, therefore, the plaintiff is entitled to an injunction restraining the payment of any salary to the individual defendants in excess of the salaries that they received in 1916, which is all that is asked for in the way of injunctive relief.

The appointment of a temporary receiver of a corporation is a drastic remedy which, by reason of the impairment of the credit of a corporation should not be granted unless it be necessary for the protection of the corporation or its stock-

holders. The claim of the defendant Smith is that his agreement with Nichols inured to the benefit of Nichols only and was not made for the benefit of any other preferred stockholder. If that be so, the corporation might lawfully pay any reasonable salary to any of its officers or employees which might be deemed an expense of the business to be deducted before the ascertainment of net profits. No necessity is shown for crippling the efficiency of this corporation by the appointment of a temporary receiver before the trial of the issues for a corporation which is absolutely sound and without any allegation that the individual defendants are not abundantly responsible and able to respond to any judgment which may be rendered against them. If this temporary injunction be granted restraining the payment of any salaries in excess of the salaries paid in 1916, any receiver appointed by the court would simply carry on the business of the corporation as it is now being carried on, as to which there is no claim of mismanagement except as to the payment of these salaries thus to be enjoined.

The order, therefore, should be reversed, with ten dollars costs and disbursements, and the motion granted as demanded in the application therefor for the injunction, and the motion as far as it asks for a temporary receiver should be denied.

CLARKE, P. J., DOWLING, PAGE and GREENBAUM, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted as demanded in application therefor for an injunction, and so far as it asks for a temporary receiver denied. Settle order on notice.